UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Golf Village North, LLC, *et al.*,

    Plaintiffs,

v.

The City of Powell, Ohio, *et al.*,

    Defendants.

Case No. 2:16-cv-668

Judge Michael H. Watson

Magistrate Judge Deavers

## OPINION AND ORDER

Defendants the City of Powell and David Betz ("Betz," collectively, the "City" or "Defendants") move to dismiss the First Amended Complaint, ECF No. 45, filed by Golf Village North, LLC and Triangle Properties, Inc., (collectively, "Golf Village" or "Plaintiffs"). Mot. Dismiss, ECF No. 50. For the following reasons, the Court **DENIES** Defendants' motion.

## I. BACKGROUND

This dispute involves two parcels of real property owned by Golf Village covering approximately 8.1 acres located in Powell, Ohio, at the northeast corner of Sawmill Parkway and Seldom Seen Road ("Property"). The Property is currently vacant and zoned for planned commercial use. Plaintiffs seek to develop a portion of their planned development, the Golf Village Community, as a residential hotel.

In April 2016, Plaintiffs, through counsel, sent a letter to the City of Powell's Director of Development, Betz, seeking approval of their proposed use of the Property. Plaintiffs requested a "prompt decision pursuant to Section 113.05(a) [of the City's Zoning Code] that the proposed residential hotel is a permitted use" so that they could then submit a final development plan to the City for approval. Ex. 3 at 6, ECF No. 45-3. A month later, on May 5, 2016, Betz responded, declining to provide Plaintiffs with the requested decision. He stated that the Zoning Code does not establish a process for providing applicants with "advisory opinions," but instead requires "that an applicant must submit a full and complete application" for "a Zoning Certificate approval." Ex. 4 at 3, ECF No. 45-5.

Thereafter, on May 24, 2016, Plaintiffs submitted an Application for Appeal to the City's Board of Zoning Appeals challenging the Zoning Administrator's decision not to provide Golf Village with the requested interpretation of the Zoning Code. No hearing was held. On June 9, 2016, however, the City's Law Director emailed Plaintiffs, asserting that the Zoning Administrator's May 5, 2016, response was not an appealable administrative action. For that reason, he stated, the City would take no action on Plaintiffs' Application for Appeal.

On July 8, 2016, Plaintiffs filed a Notice of Appeal in the Delaware Court of Common Pleas, appealing the City's June 9, 2016 refusal to hear their

administrative appeal.[1] *See Golf Vill. N., LLC v. City of Powell, Ohio*, 2018-Ohio-151, ¶¶ 5–7, 2018 WL 456217, slip op. at *1 (5th Dist.) (recounting procedural history of trial court proceedings). On March 15, 2017, the trial court dismissed Plaintiffs' appeal. *Id*. The court found that dismissal was warranted in part because Plaintiffs had not received a final appealable order and therefore the court had no subject matter jurisdiction. *Id*. The trial court also held that the City's zoning code is not unconstitutionally vague, that there was no violation of due process, and that there was no Equal Protection violation. *See id*. at ¶¶ 8–13, *2. Golf Village appealed the trial court's decision to the Fifth District Court of Appeals. On January 11, 2018, during the pendency of this motion, the Fifth District affirmed the trial court's dismissal, holding that "because there was no final appealable order . . . [t]he trial court . . . did not have subject matter jurisdiction." *Id*. at ¶ 22, *3. Thereafter, Plaintiffs appealed to the Supreme Court of Ohio who declined to accept jurisdiction of the appeal. *Golf Vill. N., L.L.C. v. Powell*, 2018-Ohio-1990, 152 Ohio St. 3d 1482, 98 N.E.3d 296 (table) (Ohio 2018).

---

[1] The Court takes judicial notice of facts in the public record, specifically the records of state court proceedings, under Federal Rule of Evidence Rule 201. *See* Fed. R. Evid. 201; *see also Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980) ("Federal courts may take judicial notice of proceedings in other courts of record.") (quoting *Granader v. Public Bank*, 417 F.2d 75, 82–83 (6th Cir. 1969)); *Scarso v. Cuyahoga Cty. Dep't of Human Servs.*, 747 F. Supp. 381, 386 (N.D. Ohio 1989), *aff'd in part and remanded*, 917 F.2d 1305 (6th Cir. 1990) ("[I]n ruling on a motion to dismiss, a court may take judicial notice of the laws of a state and records of state court proceedings.").

On July 11, 2016, days after filing their state court action, Plaintiffs also filed the present case. In this federal action, Plaintiffs bring the following claims against the City, all under 42 U.S.C. § 1983: (1) deprivation of property and liberty interests without due process of law; (2) deprivation of property and liberty interests without due process of law by refusing to hear their appeal; (3) unequal protection of the law; and (4) deprivation of property and liberty interests pursuant to an unconstitutionally vague act. Plaintiffs also request a declaratory judgment that Defendants violated the zoning code.

After Plaintiffs filed their First Amended Complaint, ECF No. 45, Defendants moved to dismiss. ECF No. 50. Plaintiffs opposed the motion, ECF No. 52, and Defendants replied, ECF No. 53. This matter is now ripe for the Court's review.

## II. STANDARD OF REVIEW

Defendants move to dismiss Plaintiffs' Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1). Rule 12(b)(1) permits dismissal for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The Supreme Court has explained that subject matter jurisdiction is a threshold determination. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 101 (1998); *Am. Telecom Co., L.L.C. v. Republic of Lebanon,* 501 F.3d 534 (6th Cir. 2007).

"Rule 12(b)(1) motions to dismiss for lack of subject-matter jurisdiction generally come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prods. v. Sherwin–Williams Claims,* 491 F.3d 320, 330 (6th Cir. 2007) (citing

*Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir.1990)). "A facial attack on the subject-matter jurisdiction alleged in the complaint questions merely the sufficiency of the pleading." *Id.* "When reviewing a facial attack, a district court takes the allegations in the complaint as true," and construes them in the light most favorable to the nonmoving party, a safeguard similar to that employed under Federal Rule of Civil Procedure 12(b)(6). *Id.*; *see also United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). "If those allegations establish federal claims, jurisdiction exists." *Gentek Bldg. Prods.*, 491 F.3d at 330. A factual attack is a challenge to the factual existence of subject matter jurisdiction. *Ritchie*, 15 F.3d at 598. "When a Rule 12(b)(1) motion attacks the factual basis for jurisdiction, the district court must weigh the evidence and the plaintiff has the burden of proving that the court has jurisdiction over the subject matter." *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005).

In this case, Defendants have neither pointed to any disputed facts that they have called upon the Court to resolve in their motion to dismiss, nor asked the Court to weigh any evidence presented by the parties to decide jurisdictional facts. *See generally*, *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1135 (6th Cir. 1996); *Leader Techs. Inc. v. Zacks*, No. 2:07-cv-473, 2008 WL 440423, at *3 (S.D. Ohio Feb. 13, 2008). For these reasons, the Court concludes that Defendants have mounted a facial challenge to subject matter jurisdiction. The Court thus construes the Amended Complaint in Plaintiffs' favor and accepts the factual allegations contained in the Amended Complaint as true.

## III. ANALYSIS

Defendants seek dismissal of Plaintiffs' claims, arguing the Court lacks subject matter jurisdiction because the claims are unripe and that the Court should abstain from hearing the case under the *Younger* abstention doctrine.

### A. Ripeness

The doctrine of ripeness emanates from Article III of the United States Constitution, which, *inter alia*, limits the jurisdiction of federal courts to consideration of actual cases and controversies, and precludes federal courts from rendering advisory opinions. *Arnett v. Myers*, 281 F.3d 552, 562 (6th Cir. 2002) (citing *Adcock v. Firestone Tire and Rubber Co.*, 822 F.2d 623, 627 (6th Cir. 1987)). The doctrine "focuses on the timing of the action," *United States Postal Serv. v. Nat'l Ass'n of Letter Carriers*, 330 F.3d 747, 751 (6th Cir. 2003), and encompasses "Article III limitations on judicial power" as well as "prudential reasons for refusing to exercise jurisdiction." *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (citation and internal quotation marks omitted). Enforcing ripeness discourages "premature adjudication" of legal questions and judicial entanglement in abstract controversies. *Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008) (en banc). "[It] is more than a mere procedural question; it is determinative of jurisdiction. If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed." *River City Capital, LP. v. Bd. of Cty. Comm'rs*, 491 F.3d 301, 309 (6th Cir. 2007) (citation and internal quotation marks omitted).

To determine whether a case is ripe for judicial resolution, the Court generally asks two questions: (1) is the dispute fit for a judicial decision in the sense that it arises in a "concrete factual context" and involves "a dispute that is likely to come to pass"; and (2) what is the hardship to the claimant if the federal court withholds consideration? *Warshak*, 532 F.3d at 525; *see also Miles Christi Religious Order v. Twp. of Northville*, 629 F.3d 533, 537 (2010). In certain land-use contexts, however, "the demands of 'a concrete factual context' and 'a dispute that is likely to come to pass' converge in an insistence on 'finality[.]'" *Miles Christi*, 629 F.3d at 537.

### 1. Finality

Defendants argue that because Plaintiffs did not receive a final decision from the City on their zoning application—and in fact have not filed a zoning application at all—their claims are not ripe for this Court's review under *Williamson County*. Defendants also insist that Plaintiffs will not suffer any hardship if the Court dismisses the Amended Complaint because Plaintiffs can still submit a zoning application. Plaintiffs respond that their due process claims are "immediately cognizable" in federal court, relying on the Sixth Circuit's decision in *Nasierowski Bro. Inv. Co. v. City of Sterling Heights*, 949 F.2d 890 (6th Cir. 1991). Further, Plaintiffs assert that even if the Court finds that *Williamson County* applies, their claims are ripe because the "finality requirement" as interpreted by the Sixth Circuit has been met. Finally, on the issue of hardship, Plaintiffs claim they will be "unduly harmed" because they are

incurring damages from lost profits and increased construction costs with each passing day.

The finality principal was first announced by the Supreme Court in *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985), where it held, in relevant part, that Fifth Amendment takings claims are not ripe until the relevant administrative agency has reached a final decision regarding application of the regulations to the property at issue. 473 U.S. at 192–94. The Sixth Circuit has extended *Williamson County*'s holding beyond takings claims, establishing that "[w]hether finality is required in any given case depends upon the type of the harm alleged." *Bowers v. City of Flint*, 325 F.3d 758, 762 (6th Cir. 2003). For that reason, the Court will address the ripeness of each of Plaintiffs' claims individually.[2]

### a. Equal Protection Claim

The Sixth Circuit has established that finality under *Williamson County* is required for equal protection claims. *See, e.g., Brown v. City of Royal Oak, Mich.*, 202 F. App'x 62, 67 (6th Cir. 2006) (applying *Williamson County*'s finality requirement to plaintiff's equal protection claim, holding that finality was not demonstrated, and thus the claim was not ripe, because plaintiff could not show "that pursuit of further administrative action would not be productive"); *Bannum,*

---

[2] This Opinion and Order will analyze Counts One through Four of Plaintiffs' Amended Complaint. Because Defendants make no substantive argument for dismissal of Count Five for declaratory relief, Plaintiffs' claim for declaratory relief remains.

*Inc. v. City of Louisville, Ky.*, 958 F.2d 1354, 1363 (6th Cir. 1992) (applying *Williamson County*'s finality requirement to plaintiff's claim that the procedures mandated by the city's zoning regulations denied it equal protection under the law); *Bigelow v. Michigan Dep't of Nat. Res.*, 970 F.2d 154, 158–59 (6th Cir. 1992) (finding that the *Williamson County* finality requirement applies to both equal protection and takings claims); *Wedgewood Ltd. P'ship I v. Twp. of Liberty, Ohio*, 456 F. Supp. 2d 904, 922 (S.D. Ohio, Oct.12, 2006) (Marbley, J.) ("It is undisputed . . . that Plaintiff's equal protection claim is subject to the *Williamson County* final decision requirement."). Therefore, Plaintiffs' equal protection claim is subject to *Williamson County*'s finality requirement.

Both parties here agree that Plaintiffs did not receive a formal decision from the City on a zoning application; indeed, Plaintiffs never submitted a formal zoning application. Defendants insist that this necessarily indicates a lack of finality that is fatal to Plaintiffs' claim. But the definition of "finality" in this context is not so narrow.

As the *Williamson County* Court explained, "the finality requirement is concerned with whether the initial decisionmaker has arrived at a definite position on the issue that inflicts an actual, concrete injury . . . ." 473 U.S. at 193. Elaborating on this principle, the Sixth Circuit has stated that:

> [w]hat is needed before litigation can proceed in a case such as this is that proceedings have reached some sort of an impasse and the position of the parties has been defined. We do not want to encourage litigation that is likely to be solved by further administrative action and we do not want to put barriers to litigation in front of litigants when it is

>obvious that the process down the administrative road would be a waste of time and money . . . . By finality we mean that the actions of the city were such that further administrative action . . . would not be productive. This test, of course, can be met by the exhaustion of remedies. It can also be met by other evidence and *can be satisfied prior to compliance with all the required procedures.*

*Bannum, Inc.*, 958 F.2d at 1362–63 (emphasis added); *see also Brown*, 202 F. App'x at 67.

At bottom, then, to demonstrate that an equal protection claim is ripe, Plaintiffs must show that the parties have reached "some sort of impasse" between their clearly defined positions regarding the permitted use of the Property at issue, such that further administrative action would not be productive.

Plaintiffs have satisfied the finality requirement here. In their Amended Complaint, Plaintiffs allege that the Zoning Administrator has "conceded that no other information beyond what Golf Village previously provided to him was necessary." Am. Compl. ¶ 92, ECF No. 17. Further, Plaintiffs allege that the Zoning Administrator has already "admitted that he would not issue a Zoning Certificate to Golf Village for its Planned Development because he concluded that a residential hotel is not a permitted use on the Property." *Id.* Taking these allegations as true, *see* Fed. R. Civ. P. 12(b)(1); *Gentek Bldg. Prods.*, 491 F.3d at 330, the Court finds them sufficient to demonstrate that the parties have "clearly defined positions" between which they have reached an impasse. Simply put, Plaintiffs believe that their proposed use is permitted under the City's Zoning Code; Defendants do not. And, importantly, taking Plaintiffs' allegations as true,

Defendants' have come to this conclusion prior to receiving or reviewing a formal Zoning Certificate application. On these facts, the Court finds that Defendants, the decisionmakers here, "ha[ve] arrived at a definitive position . . . that inflicts an actual, concrete injury." *Williamson County*, 473 U.S. at 193. Moreover, "[w]e do not want to put barriers to litigation in front of litigants when it is obvious that the process down the administrative road would be a waste of time and money." *Bannum*, 958 F.2d at 1362. Here, Plaintiffs allege they were denied an initial informal determination regarding whether the proposed use was a permitted use, and subsequently have been informed that a Zoning Certificate will not be issued because the proposed use is not permitted. The Court believes this sufficiently defines the parties' positions such that further administrative action on this dispute would not be productive. Therefore, the finality requirement has been met.

### b. Due Process

Plaintiff brings three due process claims contained in Counts 1, 2, and 4 respectively. As discussed by the Sixth Circuit in the cases of *Nasierowski Bro. Inv. Co.* and *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1212 (6th Cir. 1992), finality may not be required either for claims of procedural or substantive due process. *See Nasierowski Bro. Inv. Co.*, 949 F.2d at 894 (finding that "in the case of a procedural due process claim, 'the allegedly infirm process is an injury in itself'" and thus such a claim "is instantly cognizable in federal court without requiring a final decision") (internal citations omitted); *Pearson*, 961 F.2d at 1215

(interpreting the "prevailing law" in the Sixth Circuit to be that "the very existence of an allegedly unlawful zoning action, without more, makes a substantive due process claim ripe for federal adjudication" and therefore finding the plaintiff's substantive due process claim was ripe). However, we need not reach this question because Plaintiffs have demonstrated finality here, as discussed *supra*. Therefore, Plaintiffs' due process claims are sufficient under the first prong of the ripeness inquiry under Rule 12(b)(1).

### 2. Hardship to Claimants

The Court now turns to the second ripeness consideration: whether there will be hardship to Plaintiffs if the Court withholds consideration of the dispute. *See Warshak*, 532 F.3d at 525.

Defendants argue that Plaintiffs will not suffer any hardship if the Court dismisses the Amended Complaint because Plaintiffs can still submit a zoning application to the City and acquire a final decision on their proposed use. Plaintiffs, on the other hand, claim they will be "unduly harmed" because they are incurring damages from lost profits and increased construction costs resulting from Defendants' failure to approve Golf Village's proposed use of the Property.

Generally, the "prototypical case of hardship" in the ripeness context is one in which a claimant "faces a choice between immediately complying with a burdensome law or risk[ing] serious criminal and civil penalties." *Id.* at 531 (internal quotations and citations omitted) (alterations in original); *see also Sch. Dist. of City of Pontiac v. Sec'y of U.S. Dep't of Educ.*, 584 F.3d 253, 263–64 (6th

Cir. 2009) (finding hardship demonstrated where plaintiffs were faced with deciding between "drastic budget reallocation" to comply with the statute and "serious statutory consequences").

In this case, Plaintiffs have not alleged that they risk criminal or civil penalties and thus this is not a "prototypical case of hardship." Nevertheless, this Circuit has also looked to other factors to determine if hardship exists. For example, although factually distinguishable from the present case, the Sixth Circuit's discussion of hardship in *Miles Christi Religious Order v. Twp. of Northville*, 629 F.3d 533, 540 (6th Cir. 2010) is illuminating.

In *Miles Christi*, the claimant was a religious order (the "Order") conducting services and Bible study sessions in a house that it owned in a residential neighborhood. 629 F.3d at 535. After neighbors complained about parking congestion at the house, the township investigated and informed the Order that, because it was using the residence in a manner not permitted by the existing zoning permits, it would need to seek a variance to allow for additional parking and submit a site plan detailing the expansion. *Id.* at 535–36. When the Order failed to submit a site plan, it was issued a ticket for violating the township's zoning ordinance, prompting it to file an action alleging violations of the Religious Land Use and Institutionalized Persons Act and the First Amendment. *Id.* at 536.

The Sixth Circuit ultimately upheld the district court's decision to dismiss the case as unripe in part because the order had not demonstrated hardship. The court found that under the zoning code at issue, the zoning board could have

determined, "as a matter of interpretation," that the Code did not require the Order to submit a site plan; or it could have determined, "as a matter of discretion," that the Order should get a variance. *Id*. at 540. Either way, the Court found, the Order would have been able to "continue its current use of the residence without incurring additional costs or burdens." *Id*. Thus, no hardship was shown. *Id*.

The *Miles Christi* Court also recognized that "the existence of a constitutional claim . . . affects the hardship component of the ripeness inquiry." *Id*. (but noting that "the existence of a chilling effect, even in the area of First Amendment rights, has never been considered a sufficient basis . . . for prohibiting state action" and ultimately finding that the potential chilling effect did not pose a problem for the Order (quoting *Younger v. Harris*, 401 U.S. 37, 51 (1971))). Therefore, *Miles Christi* identifies two additional considerations in the hardship analysis: (1) whether the party will incur additional costs or burdens; and (2) whether a constitutional claim is present.

Here, Plaintiffs allege that they are currently incurring expenses and that there is no real hope of that ending any time soon; they either change their proposed development plan for the property or continue facing expenses. In sharp contrast to the plaintiffs in *Miles Christi*, taking the allegations as true, there is no viable option for Plaintiffs to get relief from the City's Zoning Board without judicial intervention. Thus, the "consequences of staying [the Court's] hand" here, according to Plaintiffs' allegations, would be to force Plaintiffs to incur the

determined, "as a matter of interpretation," that the Code did not require the Order to submit a site plan; or it could have determined, "as a matter of discretion," that the Order should get a variance. *Id*. at 540. Either way, the Court found, the Order would have been able to "continue its current use of the residence without incurring additional costs or burdens." *Id*. Thus, no hardship was shown. *Id*.

The *Miles Christi* Court also recognized that "the existence of a constitutional claim . . . affects the hardship component of the ripeness inquiry." *Id*. (but noting that "the existence of a chilling effect, even in the area of First Amendment rights, has never been considered a sufficient basis . . . for prohibiting state action" and ultimately finding that the potential chilling effect did not pose a problem for the Order (quoting *Younger v. Harris*, 401 U.S. 37, 51 (1971))). Therefore, *Miles Christi* identifies two additional considerations in the hardship analysis: (1) whether the party will incur additional costs or burdens; and (2) whether a constitutional claim is present.

Here, Plaintiffs allege that they are currently incurring expenses and that there is no real hope of that ending any time soon; they either change their proposed development plan for the property or continue facing expenses. In sharp contrast to the plaintiffs in *Miles Christi*, taking the allegations as true, there is no viable option for Plaintiffs to get relief from the City's Zoning Board without judicial intervention. Thus, the "consequences of staying [the Court's] hand" here, according to Plaintiffs' allegations, would be to force Plaintiffs to incur the

expense of a zoning application with the understanding that such an exercise would be futile since the Zoning Administrator has admitted that the proposed development will not be approved. Moreover, the existence of constitutional claims, while not sufficient alone to show hardship, adds additional support to a finding that hardship has been shown. *See Miles Christi*, 629 F.3d at 540. Therefore, taking Plaintiff's allegations as true, the Court finds that Plaintiffs have made a sufficient showing of hardship.

For all of these reasons, the Court finds that Plaintiffs' claims are ripe for adjudication. Defendants' motion to dismiss on this basis is therefore **DENIED**.

## B. Abstention

Defendants also move to dismiss Plaintiffs' action under the *Younger* abstention doctrine, arguing that this Court should abstain because there is an ongoing state proceeding that implicates important state interests and that affords Plaintiffs an adequate opportunity to raise their constitutional challenges. Plaintiffs argue in response that the *Younger* abstention doctrine is wholly inapplicable because the case does not fall into any of the three "exceptional circumstances" that trigger the *Younger* doctrine.

As an initial matter, the "ongoing state proceeding" to which Defendants refer appears to be concluded, *see Golf Vill. N., L.L.C. v. Powell*, 2018-Ohio-1990, 152 Ohio St. 3d 1482, 98 N.E.3d 296 (table) (Ohio 2018), which makes this argument moot. In any case, this Court agrees with Plaintiffs and finds that the *Younger* doctrine is wholly inapplicable here.

In *Younger v. Harris,* the Supreme Court held that federal courts should refrain from interfering in a pending state criminal law enforcement process. *See* 401 U.S. 37 (1971). The doctrine "reflects a strong policy against federal intervention in state judicial processes in the absence of great and immediate irreparable injury to the federal plaintiff." *Moore v. Sims,* 442 U.S. 415, 423 (1979). The holding in *Younger*—that a federal court should abstain from enjoining a pending state criminal proceeding—has been extended to civil proceedings in which important state interests are involved. *See Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 11 (1987); *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 603–05 (1975); *see also Meyers v. Franklin Cty. Court of Common Pleas*, 23 F. App'x 201, 204 (6th Cir. 2001) (discussing the expansion of the *Younger* doctrine).

In *Sprint Commc'ns, Inc. v. Jacobs*, the United States Supreme Court clarified the *Younger* doctrine, emphasizing that *Younger* abstention is warranted only in "exceptional circumstances." 571 U.S. 69, 78 (2013) (citing *New Orleans Public Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 364 (1989) ("NOPSI")). The requisite exceptional circumstances exist in only three types of proceedings. *Id.* First, *Younger* precludes federal intrusion into ongoing state criminal prosecutions. *Id.* Second, abstention is warranted in certain civil enforcement proceedings which are akin to a criminal prosecution in "important respects." *Id.* at 79 (quoting *Huffman*, 420 U.S. at 604). Third, federal courts should refrain from interfering with civil proceedings involving orders that are

"uniquely in furtherance of" the state court's ability to perform their judicial functions." *Id*. at 78 (quoting *NOPSI*, 491 U.S. at 367–68).

The present case does not fall into any of those three categories. The first and second categories are inapplicable because this case is a civil, not criminal, proceeding, and the case does not resemble a criminal prosecution in any respect. Civil enforcement proceedings that are akin to criminal prosecutions generally involve a state actor initiating a suit against a federal plaintiff in state court to sanction the federal plaintiff for a wrongful act. *Id*. at 79; *see also Middlesex Cty. Ethics Comm. v. Garden State Bar Assn.*, 457 U.S. 423, 433–34 (1982) (state-initiated disciplinary action against lawyer for violation of state ethics rules akin to criminal prosecution); *Doe v. Univ. of Kentucky*, 860 F.3d 365, 370 (6th Cir. 2017) (disciplinary proceedings initiated by a public university—a state actor—akin to criminal prosecution for purposes of the *Younger* doctrine). Here, the state-court action, like the action before this Court, involved a zoning dispute and was initiated by Plaintiffs—not "by the State in its sovereign capacity." *Sprint*, 571 U.S. at 592. Neither is this Court aware of any formal sanctions that Defendants have sought against Plaintiffs or any investigation conducted by a state authority into Plaintiffs' activities. *See id*.

This case also does not fall into the third category to which *Younger* applies because going forward in this matter will not interfere with an order that uniquely furthers an Ohio court's ability to perform its judicial function. Cases in this third category generally involve a state court's attempt to effectuate its

orders. See, e.g., Judice v. Vail, 430 U.S. 327, 335–36 (1977) (civil contempt order); Pennzoil Co. v. Texaco Inc., 481 U.S. 1, 13 (1987) (requirement for the posting of bond pending appeal). These cases also have involved a federal plaintiff asking a federal court to enjoin a state proceeding, or otherwise attempting to use the federal court as a shield against a state enforcement effort. See Devlin v. Kalm, 594 F.3d 893, 894–95 (6th Cir. 2010). The present case does not involve a civil contempt order, rules related to the posting of bond pending appeal, or any other state court order. Neither do Plaintiffs seek an injunction against a state proceeding or order. Because this federal action will not interfere with any state order that is "uniquely in furtherance of" the judicial function of the Ohio court, Younger abstention on this basis is unwarranted.

In their motion, Defendants devote substantial attention to the Supreme Court's decision in Middlesex, asserting that it holds that Younger abstention is required whenever three conditions are met: **(1)** there are ongoing state judicial proceedings; **(2)** those proceedings implicate important state interests; and **(3)** the state proceedings offer an adequate opportunity to raise constitutional challenges. Mot. Dismiss 12, ECF No. 50. But as the Supreme Court clarified in Sprint, the three Middlesex conditions were not dispositive; instead, they were "*additional* factors appropriately considered by the federal court before invoking Younger." Sprint, 571 U.S. at 81 (emphasis in original). Only *after* a federal court determines whether one of the three "exceptional circumstances" outlined

in *NOPSI* is present should the court evaluate the *Middlesex* factors. *See id*; *see also Doe*, 860 F.3d at 369.

Accordingly, because none of the "exceptional circumstances" warranting *Younger* abstention exist here, Defendants' motion to dismiss Plaintiffs' Amended Complaint on these grounds is **DENIED**.

## IV. CONCLUSION

For the reasons set forth above, the Court **DENIES** Defendants' motion to dismiss, ECF No. 50.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**